IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------X
:
PROTEGRITY CORP.                :          3:13 CV 1781 (JBA)
:
V.                              :
:
EPICOR SOFTWARE CORP.           :          DATE: AUGUST 6, 2014
:
------------------------------------------------------X

RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER

On December 2, 2013, plaintiff commenced this patent infringement action (Dkt. #1); on January 27, 2014, defendant filed its answer, affirmative defenses and counterclaims (Dkt. #20), as to which plaintiff filed its answer to the counterclaims on February 18, 2014. (Dkt. #21). Under the electronic scheduling order filed on February 21, 2014 by U.S. District Judge Janet Bond Arterton, all discovery is to be completed by January 7, 2015 and all dispositive motions are to be filed by February 7, 2015.

On April 29, 2014, defendant filed the pending Motion for Protective Order (Dkt. #25),[1] as to which plaintiff filed its brief in opposition on May 20, 2014. (Dkt. #27).[2] Defendant filed its reply brief eight days later. (Dkt. #28).[3] On July 29, 2014, Judge Arterton referred the pending motion to this Magistrate Judge. (Dkt. #34).

In its motion, defendant represents that an additional protective order is necessary to maintain the security of the electronic data at issue in this litigation, and that its proposed Protective Order is identical to two issued in this district by U.S. District Judge Robert N.

---

[1] Attached as Exh. A is defendant's Proposed Protective Order.

[2] Two exhibits are attached: plaintiff's Proposed Source Code Protective Order (Exh. A); and a redline comparison of the two Proposed Source Code Protective Orders (Exh. B).

[3] None of these briefs contain citations to any case law.

Chatigny in litigation brought by plaintiff, Protegrity Corp. v. Voltage Sec., Inc., No. 10 CV 755 (RNC), Dkt. #103 and Protegrity Corp. v. Ingrian Networks, Inc., No. 08 CV 618 (RNC), Dkt. #149. (Dkt. #25, at 1-2). In its brief in opposition, plaintiff argues that it opposed these two protective orders, and that both cases settled prior to completion of trial. (Dkt. #27, at 1, 4-5; see also Dkt. #28, at 1). As plaintiff points out, there are two substantive disputes between the parties: (1) a patent prosecution bar, and (2) the logistics of exchanging source code. (Id. at 2, & Exh. B at 18-19, 11-16).

The Court found five recent decisions on these topics, four of which involve large high-tech companies whose security concerns certainly are as significant as those at issue here. A detailed analysis of patent prosecution bars is found in Clayton Corp. v. Momentive Performance, Materials, Inc., No. 4:12 CV 1349 (AGF), 2013 WL 2099437, at *1 (E.D. Mo. May 14, 2013), where the parties agreed on all terms of the proposed protective order except for the inclusion of a two-year patent prosecution bar. The District Judge relied heavily upon the Federal Circuit's decision in In re Deutsche Bank Trust Co. Am., 605 F.3d 1373, 1378 (Fed. Cir. 2010), which held that Federal Circuit law applies to "the determination of whether a protective order should include a patent prosecution bar[,]" which is "an issue unique to patent law[.]" 2013 WL 2099437, at *1 (citations omitted). As the District Judge explained:

> Protective orders typically include provisions specifying that designated confidential information may be used only for purposes of the current litigation, and such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation. There may be circumstances, however, in which even the most rigorous efforts to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent disclosure.

Id. (citation & footnote omitted). The court continued that the party seeking a patent

prosecution bar bears the burden of showing good cause for its inclusion in a protective order, so that

> [t]he proponent of the bar must show that counsel's representation of the client in matters before the [Patent and Trademark Office ("PTO")] is likely to implicate competitive decision making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation. If such a risk exists, a court must weigh it against the potential injury to the moving party from restrictions imposed on its choice of litigation and [patent] prosecution counsel.

Id., citing Deutsche Bank, 605 F.3d at 1377, 1381 (internal quotations omitted)(alteration in original). The Clayton court then defined "competitive decision making" as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Id. at *2, quoting Deutsche Bank, 605 F.3d at 1378 (additional citation & internal quotations omitted). The court continued, however, that "[e]very patent prosecution or litigation attorney is not necessarily involved in competitive decision making[,]" but rather

> [a]ttorneys [who] are more substantially engaged with prosecution, such as those making strategic decisions on the type and scope of patent protection that might be available or worth pursuing and writing, reviewing, or approving new applications, are more likely to be involved in competitive decision making, and therefore are more at risk of inadvertent disclosure of competitive information learned during litigation.

Id. at *2, quoting Deutsche Bank, 605 F.3d at 1379 (internal quotations omitted). The court emphasized that "each case must be decided based on the specific facts involved therein[,]" that "[i]t is specific evidence –not an inflexible rule–that supports a finding of competitive decision making[,]" and that "it is incumbent upon a party seeking a prosecution bar to provide such evidence." Id., quoting Deutsche Bank, 605 F.3d at 1380 & other cases (internal quotations omitted).

3

In Clayton, defendants emphasized that the parties were "direct competitors" and that the requested discovery related to "highly sensitive research and development and manufacturing work." Id. at *2. While the proposed protective order allowed trial counsel to participate in post-grant proceedings, such as commenting on the prior art, defendants conceded that "the bar extends to patent prosecution before the PTO, as well as drafting or amending claims in post-grant proceedings, such as reexamination and reissue." Id. at *3. Defendants' request for a patent prosecution bar was denied, because defendants "offer[ed] no specific evidence that trial counsel's activities with respect to patent prosecution competitive constitute decision making[,]" they failed to "demonstrate[] counsel's involvement with the plaintiff's internal business activities that creates a high risk of inadvertent disclosure[,]" and they did not provide the court with any affidavits, declarations or any other form of evidence on any issue related to the proposed prosecution bar, so that

> [a]s a result, the [c]ourt ha[d] no evidentiary basis upon which to determine what relations [p]laintiff's attorneys have with their client, what the scope of their representation of [p]laintiff is, who they advise or consult within the company, or any other ground by which the [c]ourt could gauge the risk of inadvertent disclosure of confidential information.

Id. at *3-4 (internal quotations & citations omitted). The Clayton court added that "[w]ithout such evidence, a party has not shown why a court should impose a bar on opposing counsel's activities[,]" since "vague statements are not enough to warrant the unnecessary hardship that would result from the issuance of a patent prosecution bar." Id. (multiple citations, internal quotations & alterations omitted). See also Buysafe, Inc. v. Google, Inc., Civ. No. 3:13 CV 781 (HEH), 2014 WL 2468553, at *1-3 (E.D. Va. June 2, 2014), citing Deutsche Bank, 605 F.3d at 1378, 1380-81; PPC Broadband, Inc. v. Times Fiber Comm's, Inc., Civ. No. 5:13-CV-460 (GLS/DEP), 2014 WL 859111, at *1-4 (N.D.N.Y. Mar. 5,

2014)(same); Helferich Patent Licensing, LLC v. New York Times Co., No. 10 C 4387, 11 C 7395, 11 C 7607, 11 C 7647, 11 C 9143, 2013 WL 3177605, at *1-5 (N.D. Ill. June 21, 2013)(same); EPL Holdings, LLC v. Apple, Inc., No C-12-04306 (JST)(JSC), 2013 WL 2181584, at *1-5  (N.D. Cal. May 20, 2013)(same).

As previously indicated, two aspects of the proposed Protective Order are at issue here: (1) whether the patent prosecution bar should include post-grant activities; and (2) what constitutes adequate protection of the parties' source codes.   (Dkt. #27, at 2 & Exh. B, at 18-19, 11-16).  Both of these issues were addressed in last year's decision in EPL Holdings, Inc. v. Apple, Inc.  As in EPL Holdings, 2013 WL 2181584, at *2, the parties here do not object to a restriction for patent prosecution that occurs prior to the issuance of the patent at issue, but rather disagree as to whether the bar should extend to post-grant review. (Dkt. #27, at 2).  In EPL Holdings, plaintiff EPL's proposed provision placed post-grant reviews outside the scope of the prosecution bar, whereas defendant Apple argued that review and reexamination proceedings allow counsel to be involved in competitive decision-making, such as limiting the scope of the patent.  Id. at *2-3.

The Magistrate Judge in EPL Holdings relied upon two prior decisions against defendant Apple, in which the court had "allowed litigation counsel a 'limited role' in review and reexamination proceedings[,]" namely that the "patentee counsel should not be banned from reexamination proceedings so long as 1) the proceedings are not initiated by the patentee, and 2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party."  Id. at *3 (citations omitted).  The Magistrate Judge in EPL Holdings found that plaintiff's proposal conflicted with the two prior decisions, and thus held that "EPL's litigation counsel . . . may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting

5

or amendment of patent claims." Id. at *4.

This issue also was addressed in PPC Broadband, Inc., in which defendant Times Fiber sought to preclude any recipient of "Highly Confidential-Prosecution Bar" information from participating in ex parte examinations or post-grant reviews, while plaintiff PPC sought to exempt those proceedings from the prosecution bar. 2014 WL 859111, at *2. U.S. Magistrate Judge David E. Peebles found that defendant Times Fiber "ha[d] not established good cause to preclude [plaintiff] PPC's counsel from participating both in litigation and post-grant proceedings before the PTO. It is not enough to identify a general risk that confidential information disclosed during litigation may influence counsel's representation of a party before the PTO." Id. at *3, citing Deutsche Bank, 605 F.3d at 1379. Magistrate Judge Peebles therefore held that plaintiff's proposed prosecution bar provision was appropriate. Id. at *4.

Consistent with the EPL Holdings and PPC Broadband cases, defendant here wants post-grant proceedings to be included within the prosecution bar, whereas plaintiff requests that post-grant activities be exempted therefrom. (Dkt. #28, at 3; compare Dkt. #25, Exh, A, § XXV, at 17-18; Dkt. #27, Exh. A, § X, at 7-8; Dkt. #27, Exh. B, at 18-19). In its reply brief, defendant argues that plaintiff's trial counsel "are competitive decision-makers[,]" and that plaintiff has used "several different [law] firms for . . . prosecuting the patents-in-suit[,]" which law firms are not involved in the litigation. (Dkt. #28, at 3). This Magistrate Judge agrees with the well-reasoned decision in EPL Holdings, so that with respect to the issue of the prosecution bar, the parties will be governed by defendant's draft, as modified by the decision in EPL Holdings, namely that patentee counsel should not be banned from reexamination proceedings so long as: (1) the proceedings are not initiated by the patentee; (2) counsel expressly agrees that in the reexamination it will not rely on any confidential

information supplied by the opposing party; and (3) litigation counsel may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims. 2013 WL 2181584, at *3-4 (citations omitted).

The second issue is the scope of protections surrounding the parties' source codes, which were described in the Buysafe, Inc. v. Google, Inc. decision as "'the crown jewels' of Google." 2014 WL 2468553, at *2 (internal citations omitted).  The detailed provisions in defendant's proposal (Dkt. #25, Exh. A, §§ XVI-XXIV, XXVI-XXXVIII, at 9-17, 18-19) in large respect mirror the detailed instructions regarding Apple's source code in EPL Holdings, 2013 WL 2181584, at *5-7.  As pointed out by plaintiff, the issue here is simply "who is in charge of the secured computer[,]" in that defendant suggests that the secured computer remain in either outside counsel's offices or, if the producing party agrees, at a third party escrow facility, whereas plaintiff proposes that the party receiving the source code maintains the secured computer.  (Dkt. #27, at 3-4; see also Dkt. #27, Exh. A, §§ I-IX, XI-XIII, at 1-7, 8; Exh. B, at 9-16).  The EPL Holding decision suggests that the secured computer with Apple's source code would be in a review room established by defendant Apple, as Apple had represented in open court that it would set up a land line telephone outside the review room for the reviewer's use.  2013 WL 2181584, at *5-6.  Thus, under the EPL Holding decision, it would appear that defendant's suggestion is the more appropriate one – that the secure computer remain in either outside counsel's offices or if the producing party agrees, at a third party escrow facility.[4]

---

[4]Defendant's Proposed Protective Order also limited plaintiff to printing up to 150 pages of source code, unless the parties agree otherwise or seek court permission for a larger number (Dkt. #25, Exh. A, § XVII(A)(iv), at 12-13; plaintiff objects to this page limitation.  (Dkt. #27, at 3).  In EPL Holdings, which concerned Apple's source codes, the printing was limited to fifty pages.  2013 WL 2181584, at *6.

The Magistrate Judge agrees that defendant's proposal is reasonable, in that it allows for

Accordingly, **on or before September 19, 2014**, counsel shall submit a revised Protective Order consistent with this ruling.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).[5]

Dated at New Haven, Connecticut, this 6th day of August, 2014.

   /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

the parties to agree to increase the number of printed pages beyond 150 pages, and in the absence of agreement, to seek a resolution from the court.

[5] If either counsel believes that a settlement conference before this Magistrate Judge could be productive, he or she should contact Chambers accordingly.