## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____

PROTEGRITY CORPORATION        )
     a Cayman Islands Company,    )
                          )
Plaintiff,                    )
                          )     Civil Action No. 3:13-cv-01781-JBA
v.                       )
                          )
EPICOR SOFTWARE CORPORATION   )
     a Delaware Corporation,      )
                          )
Defendant.                  )
_____)

**PROTEGRITY'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND IN SUPPORT OF PROTEGRITY'S MOTION TO COMPEL PRODUCTION**

Defendant has delayed this action and is now attempting to improperly use tardy petitions for the Transitional Program for Covered Business Methods Patents for an inter partes review ("CBM Review") of U.S. Patent Nos. 8,402,281 (the "'281 Patent") and 6,321,201 (the "'201 Patent") as an excuse to refuse discovery and to prejudice Protegrity.  Waiting ten months after this action was filed and only until Protegrity filed its Motion to Compel, Defendant has filed CBM Review petitions and a Motion to Stay to gain an unfair tactical advantage against Protegrity.  Not only is the Motion to Stay premature given that the Patent Trial and Appeal Board ("PTAB") has yet to grant review of the petitions, but a stay is not warranted and will further unduly prejudice Protegrity.

I.      **INTRODUCTION**

On November 1, 2013, a defendant in previous litigation with Protegrity, Voltage Security, Inc., filed a petition for CBM Review of the '281 Patent.  Specifically, Voltage challenged Claims 1, 2, 12, 17, 21, 32, 33, 28, 45, 47, 53, and 58 of the '281 Patent.  On April

15, 2014, the PTAB granted review of all the claims challenged.  Subsequently, the Voltage case settled, and Voltage dismissed its CBM Review on May 1, 2014.

On May 7, 2014, another former defendant in litigation with Protegrity, Phoenix Payment Systems, Inc., filed a CBM Review Petition of the '281 Patent.  Phoenix and Protegrity settled their litigation, and before the PTAB decided to grant or deny review of Phoenix's CBM Review Petition, Phoenix dismissed the CBM Review on June 11, 2014.  On August 29, 2014, a third-party that has since sued Protegrity, Square, Inc., filed a CBM Review Petition of the '281 Patent.  The PTAB has yet to decide whether to grant review of Square's CBM Review Petition.

Protegrity filed this action on December 2, 2013.  Since that time, Defendant has threatened Protegrity with its intent to file CBM Petitions.  However, not until October 1, 2014, and October 7, 2014, ten months after this action was filed, did Defendant file CBM Review Petitions of the '281 Patent and also of the '201 Patent, respectively (the "CBM Petitions").  Unlike Voltage's petition, Defendant's CBM Petition for the '281 Patent challenges all 60 claims.  The CBM Petition for the '201 Patent challenges all but one asserted claim—Defendant did not challenge Claim 8 of the '201 Patent, which claim was asserted against Defendant in Protegrity's Supplemental Infringement Contentions.  *See* Exhibit A.  Protegrity's Supplemental Infringement Contentions were served June 3, 2014, approximately four months before Defendant filed its tardy petitions.  As a result, regardless of any of the issues that are considered by the PTAB, Claim 8 will still remain at issue in this litigation.

All but one of the prior art raised in Defendant's CBM Petitions were previously raised in Defendant's Invalidity Contentions, which Defendant served on June 12, 2014.  *See* Exhibit B, relevant portions of Defendant's Invalidity Contentions.  However, despite having the prior art in its possession in June 2014 (at the latest), and despite its repeated threats that it intended to file

2

petitions, Defendant waited ten months from the institution of this action before filing its petitions.   In the meantime, Defendant engaged in continuous stall tactics to prevent Protegrity from moving this case forward.   In its motion, Defendant even admits that it purposely withheld discovery.   [Dkt. 55] at 1–2.   Defendant engaged in unnecessary motion practice to delay the litigation and avoid producing any documents when it never had any intention of participating in discovery.   Specifically, Defendant forced Protegrity to jump through multiple hoops in fighting over a protective order and forcing Protegrity to move to compel discovery responses without any intention of producing discovery or its source code[1].

In the meantime, Defendant continuously demanded that Protegrity supplement its already supplemented Infringement Contentions, despite Protegrity's repeated statements that it needed Defendant's source code before it could further supplement its Infringement Contentions.   After all of that, not until Protegrity filed its Motion to Compel did Defendant finally file the CBM Petitions.

Trial in this matter is currently scheduled for September 1, 2015 [22A].   Protegrity has until January 2, 2015, to file its response to the '201 Patent CBM Petition, and the PTAB has three months from that date, or April 2, 2015, to decide whether to grant review.   *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756; 37 C.F.R. §42.107(b).   CBM Reviews are designed to last twelve months, with an optional six-month extension for good cause (exclusive of time for appeals).   *See* 77 Fed. Reg. 48756; 37 C.F.R. § 42.300.   As a result, at the earliest, the CBM Review would be complete, if granted, in October of 2015, more than a month after trial is currently scheduled.

## II.      MEMORANDUM OF LAW ON MOTION TO STAY

---

[1] To date, Protegrity has produced over 90,000 pages of documents. Epicor has only produced a user manual, the file history of the patents-in-suit, and some prior art and filings from related litigations.  Indeed, the large majority of Epicor's production is simply the file history for the '201 Patent.

Section 18 of the AIA requires that the Court consider four factors when determining whether or not to grant a stay based on a petition for CBM Review:  (1) whether the grant or denial of stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether the grant or denial of stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether the grant or denial of stay will reduce the burden of litigation on the parties and on the court.   AIA § 18(b)(1).   Defendant bears the burden of establishing that a stay is warranted. *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 2014 WL 1315968 (E.D. Va. Mar. 31, 2014).

The CBM Review procedure of the AIA was only implemented in September 2012. However, in the time since its implementation, a number of courts have already encountered similar motions to stay as Defendant's — motions filed *before* the PTAB has taken any action on the petition — and have found them to be premature.  *See Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, 2013 WL 1969247, *3 (M.D. Fla. May 13, 2013)("it seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO."); *Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*, 2013 WL 4483355, *2 (D. Minn. Aug. 20, 2013)(finding it too speculative to grant a motion to stay based on the mere filing of a petition for CBM Review because the PTAB still had six months to decide whether to review a disputed patent); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2013 WL 6044407, *4 (W.D. Wis. Nov. 14, 2013)(denying a motion to stay as premature because even if the PTAB had granted the petitions, it would still not be clear that the *inter partes* review would address the issues determinative in the case); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 2013 WL 6050744, *3 (M.D. Fla. Nov. 15, 2013)("it

remains uncertain whether the petition for *inter partes* review will be granted, particularly in light of Plaintiffs' compelling argument that review will be barred under 35 U.S.C. § 315(a)(1). To that end, a stay would prejudice Plaintiffs' ability to prosecute its claims and present a clear tactical advantage to Defendants."); *Segin Systems, Inc.*, 2014 WL 1315968 (denying motion to stay, weighing heavily the fact that the CBM petition had not been granted for review); *Freeny v. Apple, Inc.*, 2014 WL 3611948 (E.D. Tex. Jul. 22, 2014)("[t]he most important . . . factor bearing on the Court's exercise of its discretion in this case is that the PTAB has not yet acted on Netgear's petition for inter partes review"); *Smartflash LLC v. Apple, Inc.*, 2014 WL 3366661 (E.D. Tex. Jul. 8, 2014)(denying motion to stay, stating that simplification of issues would be uncertain given that the PTAB had not granted review); *Benefit Funding Sys. LLC v. Advance America, Cash Advance Centers, Inc.*, 2013 WL 3296230 (D. Del. Jun. 28, 2013) ("the Court believes the proper exercise of its discretion is to maintain this case on the schedule previously ordered (D.I. 16, 41) and not delay its resolution pending the outcome of a potential administrative proceeding. The PTAB has not yet determined whether to undertake CBM Review as requested by the Petition and may not do so for another three months.").

In *Automatic Mfg. Sys., Inc.*, the court held that a patent owner should be able to prosecute its claims, to take discovery, and to set its litigation positions, at least until the PTAB indicates an interest in reviewing the challenged claims. 2013 WL 1969247 at *3. Otherwise, if a court were to stay an action pending the PTAB's decision to entertain an *inter partes* review, then the action "will have been left languishing on the Court's docket with no discovery, no positioning of the parties on claim construction, and no dispositive motions." *Id.* A stay could delay litigation for several months, and may not even result in an *inter partes* review, which would unduly prejudice the plaintiff and put the plaintiff at a tactical disadvantage. *See id.*

Section 18(b) does not require the Court to stay litigation and Defendant's argument that the legislative history urges a stay be granted is unavailing and not binding.

> [A]lthough it easily could have done so, Congress did not provide for an automatic stay in the statutory text. And the statute does not, for example, use language that directs courts to grant a stay unless a specific condition or conditions were satisfied. The Court therefore declines to rely on statements in the legislative history emphasized by Defendants that state that a stay should almost always be granted, as such sentiments are not reflected in the statutory text.

*Segin Sys., Inc.*, 2014 WL 1315968 at *3. Rather, the Court has discretion to grant or deny a stay based on the factors set forth in the statute, and in this case, the factors weigh heavily against staying the litigation.[2]

### A.  Granting a Stay Would Not Simplify the Issues In Question.

The fact that the PTAB has not yet granted review of the CBM Petitions creates doubt as to when and if the CBM Review will even occur, let alone whether it would simplify the issues or reduce the burden of litigation for the parties or the court. *Ultratec, Inc.*, 2013 WL 6044407 at *3; *see also Automatic Manufacturing. Systems, Inc.*, 2013 WL 1969247 at *3. If the PTAB grants review of the CBM Petitions, it may choose to review "all or some of the grounds of unpatentability asserted for each claim," and the review may proceed on only "some of the challenged claims" or on only "some of the grounds of unpatentability asserted for each claim." 37 C.F.R. § 42.108(a). As a result, because the PTAB has not granted review of the CBM Petitions nor has it set the scope of the reviews, it is unclear what issues would even be considered by the PTAB. *Automatic Mfg. Sys., Inc.*, 2013 WL 1969247 at *2 ("even if all the grounds in a petition are well-taken, the USPTO may authorize the review to proceed on only

---

[2] In the event that the Court finds that a stay is necessary, none of the related cases involving Protegrity should be stayed. No motion to stay has been filed in any other action and Protegrity is actively litigating those cases. Further, only two other parties have filed CBM Petitions, Square and Informatica, and none of the other parties in litigation with Protegrity have indicated that they are willing to be subject to estoppel by the petition filed by Square, Informatica, or Epicor. *See e.g., e-Watch Inc. v. Avigilon Corp.*, 2013 WL 6633936 (S.D. Tex. Dec. 17, 2013)(conditioning a stay pending conclusion of a third party's inter partes review on the defendant accepting estoppel from the review).

'some of the challenged claims' or on only 'some of the grounds of unpatentability asserted for each claim'").

Defendant argues that review is likely to be granted based on the statistics for prior CBM Review petitions and also based on the grant of review of a prior CBM Petition of the '281 Patent filed by Voltage.  As an initial matter, the PTAB only granted review of the previous CBM Petition for the '281 Patent.  No party previously filed a CBM Petition for the '201 Patent so any claim that the PTAB will grant review of the '201 Patent CBM Petition is merely speculative.  This is especially true because, unlike the '281 Patent, the '201 Patent has been more extensively litigated and examined previously.

Specifically, Voltage instituted an ex parte reexamination of the '201 Patent in December 2010.  The Patent Office quickly agreed with Protegrity's understanding of Voltage's prior art and allowed the '201 Patent without claim amendment.  Having lost its attempt to invalidate the '201 Patent on prior art grounds, Voltage next attacked the '201 Patent's patent eligibility under 35 U.S.C. § 101.  Voltage sought summary judgment that the '201 Patent was invalid because it was not directed to patent eligible subject matter.  *Protegrity Corp. v. Voltage Security, Inc.*, Case No. 3:10-CV-755 (RNC) at [Dkt 133].  The Court conducted a full day hearing during which Voltage's position was heard and denied Voltage's motion, confirming that the '201 Patent is patent eligible under § 101 and is not a business method patent.  *Id*. at [Dkts. 231, 274]. Therefore, should the PTAB decide to grant review of the CBM Petitions, the Petitions will ultimately fail.

Further, in the Voltage '281 Patent CBM Petition, the PTAB granted review of Claims 1, 2, 12, 17, 21, 32, 33, 28, 45, 47, 53, and 58.  Defendant's CBM Petition of the '281 Patent is broader, raising all 60 claims of the '281 Patent.  Therefore, it is also speculative as to which

claims of the '281 Patent the PTAB would review, if the CBM Petition is even granted, which weighs against a finding of simplification of issues. *Ultratec, Inc.*, 2013 WL 6044407 at *3 ("the fact that the Patent Office has not yet granted the petitions to review the nine patents adds an additional layer of doubt whether the inter partes review will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court.").

Additionally, the potential for simplification of issues is unclear because, although a decision from CBM Review could estop Defendant from asserting validity defenses that could have been raised in the reviews, validity is not the only issue that may be raised in a patent case. *Ultratec, Inc.*, 2013 WL 6044407 at *4.  Defendant has alleged defenses and counterclaims that will not be addressed by the PTAB.  Specifically, Defendant raised the following defenses: (1) failure to state a claim upon which relief can be granted; (2) no infringement; (3) invalidity under 35 U.S.C. §§ 101, 102, 103, 112, and 119[3]; (4) laches, waiver, estoppel, and/or acquiescence; (5) prosecution estoppel; (6) defenses under 35 U.S.C. §§ 286–288; (7) lack of actual notice; (8) no immediate, irreparable harm and the existence of an adequate remedy; (9) unenforceability due to inequitable conduct; (10) unclean hands; (11) intervening rights; (12) invalidity of the '201 Patent because the invention was derived from another party;  and (13) that the '281 Patent is tainted by inequitable conduct in connection with the '201 Patent.  [Dkt. 20]  Defendant also raised the following counterclaims: (1) declaratory judgment of non-infringement of the '281 Patent; (2) invalidity of the '281 Patent; (3) unenforceability of the '281 Patent; (4) patent misuse of the '281 Patent; (5) declaratory judgment of non-infringement of the '201 Patent; (6) invalidity of the '201 Patent; (7) unenforceability of the '201 Patent; and (8) Patent misuse or the '201 Patent.  *Id*.  A majority of these defenses and counterclaims will not be addressed by the PTAB; therefore, there will be no simplification of issues. *Procter & Gamble Co. v. Team*

---

[3] The CBM Petitions do not cover 35 U.S.C. §112 and 119.

*Technologies, Inc.*, 2014 WL 533494 at *5 (S.D. Oh. Feb. 11, 2014)(noting that significant issues would remain for the court regardless of the outcome of the inter partes review because defendants asserted defenses, including invalidity under 35 U.S.C. §112, estoppel, laches, and *res judicata*, which would not be addressed by the PTO).

Importantly, even if *every* claim of both patents is invalidated, Claim 8 of the '201 Patent will still remain as it is not at issue before the PTAB.  And should even one of the challenged claims survive either of the patents, the issues will generally remain the same in this litigation. Using Defendant's own statistics that it is more than likely that at least one claim will be found to be unpatentable,[4] it is also highly likely that not all of the claims will be reviewed and even more likely that at least some of the claims will survive.  Specifically, out of seventeen final written decisions for CBM reviews, only on six occasions have *all* claims been invalidated. http://e-foia.uspto.gov/Foia/PTABReadingRoom.jsp;                    http://www.uspto.gov/ip/ boards/bpai/stats/aia_statistics_101614.pdf (as of October 16, 2014, there have been 241 CBM Petitions filed, 109 trials instituted, with 17 final written opinions, only 6 of which invalidated all claims challenged).  When claims will or are likely to remain after PTAB review, district courts have frequently found that a stay will do little to simplify the issues at stake.  *Procter & Gamble Co.*, 2014 WL 533494 at *3; *see also Dane Technologies, Inc.*, 2013 WL 4483355 at *2 (denying a motion to stay when the *inter partes* review did not challenge one of three patents in the infringement action because the patentee "would still be left with its infringement claim for the #379 Patent languishing and unresolved"); *Segin Sys., Inc.*, 2014 WL 1315968 at *4 (citing *ePlus, Inc. v. Lawson Software, Inc.,* 2010 WL 1279092 at *3 (E.D. Va. Mar. 31,

---

[4] Defendant cites *inter partes* proceedings statistics to argue that the PTO has historically cancelled or amended at least one claim 92 percent of the time.  [Dkt. 55] at 11.  However, not only are these statistics not for CBM Reviews, but the statistics do not show how often the PTO cancels or amends *all* challenged claims, which is the only way any issues would be simplified in this case.

2010);*Tokuyama Corp. v. Vision Dynamics, LLC,* 2008 WL 4452118 at \*3–\*4 (N.D. Cal. Oct. 3, 2008); *I–Flow Corp. v. Apex Med. Techs., Inc.,* 2008 WL 2078623 at \*2 (S.D. Cal. Apr. 15, 2008)).

In its Invalidity Contentions, Defendant raised eighty-four prior art references against the '201 and '281 Patent.  In the CBM Petitions, Defendant raised six references, five of which were included in its Invalidity Contentions.  Only one reference, Atalla[5], was raised for the first time by Defendant in the CBM Review Petitions.  Not only does this demonstrate that Defendant could have filed the CBM Petitions earlier because it was in possession of the prior art well before the petitions were filed, but it also demonstrates that seventy-nine prior art references will remain in litigation after the CBM Review.  Because those references will not be considered during the CBM Review, there will be no estoppel effect for those remaining references and thus, no simplification of issues in this litigation.

Similarly, in *Smartflash*, the defendant asserted invalidity arguments in the litigation not raised in the CBM petition.  2014 WL 3366661 at \*3.  Specifically, the defendant raised twelve prior art references in its preliminary invalidity contentions.  *Id.*  However, in the CBM petition, the defendant relied on six prior art references, only three of which were used in litigation.  *Id.* The court noted that although there would be estoppel for the references raised in the CBM petition, no estoppel would exist for the remaining nine references.  *Id.*  Consequently, invalidity issues would still remain unless the PTAB invalidated every single claim of every patent.  *Id.* Given the likelihood that issues would remain after the CBM review, the court stated that the benefit of a stay was reduced.  *Id.*  Similarly here, at this early stage of the CBM Review, it is completely uncertain as to what simplification of issues or reduction of the burdens of litigation, if any, would be provided.  *Id.*; *see also Ultratec, Inc.*, 2013 WL 6044407 at \*3.  Conversely, the

---

[5] U.S. Patent No. 4,588,991.

burden and prejudice to Protegrity caused by the extensive, and potentially pointless, delay is significant, discussed in Section C, *infra*.

Lastly, the PTAB and the district courts construe claims under different standards so there would not be any simplification of issues for claim construction purposes. *Smartflash LLC*, 2014 WL 3366661 at *4 (comparing 37 C.F.R. § 41.100(b) providing that a patent should be given its broadest reasonable construction within the PTO with a court examining intrinsic record evidence to define a patented invention scope).  This is further support that the CBM Review and a stay would not simplify issues before the Court.  Consequently, this factor weighs heavily against granting a stay.

**B.      Discovery Has Already Begun and a Trial Date Has Been Set.**

Under the second factor, the Court looks at the status of discovery and whether a trial date has been set.  *Smartflash LLC*, 2014 WL 3366661 at *4.  Not only is this case over ten months old and a trial date has been set, but the parties have engaged in several rounds of discovery, and have served initial disclosures, invalidity and infringement contentions, and proposed claim terms for construction.  In its discovery responses, Protegrity has produced over 90,000 pages of responsive documents.  The Court has already invested resources in discovery disputes and any stall in discovery is because of Defendant's intentional delay in refusing to produce documents or source code.  *Benefit Funding Sys. LLC.*, 2012 WL 3296230 at *2 (denying a stay, noting that "while this case is in its relatively early stages, the Court has invested resources in (today) resolving two discovery disputes and two motions, discovery has begun (and would be more advanced but-for Defendant's resistance to discovery during pendency of its motion to stay)").

Additionally, Protegrity has propounded a second round of discovery on Defendant regarding any joint defense agreement with the other parties who have filed CBM Petitions.  If it

is determined that the parties had any joint agreement, Defendant may be subject to estoppel from any CBM Review decisions in those cases in addition to estoppel in its own CBM Review.[6] This discovery is important because it could help simplify issues in this litigation if Defendant was estopped based on these other petitions.  However, it is unclear if Protegrity would be able to obtain this information out of the PTAB proceedings and Protegrity would be prejudiced if this action was stayed pending the current discovery responses.

Further, should the Court grant a stay now, the trial date would likely be significantly delayed and the Court would need to expend resources rescheduling deadlines and dates.  *Segin Systems, Inc.*, 2014 WL 131598 at *4.  Conversely, denying the stay will not create any waste. The PTAB will not decide to take up the case for review until April 2, 2015, at the earliest.  Any discovery and/or claim construction preparation in the meantime would overlap with the CBM Review and would not be duplicative or unnecessary.  *Id.*  Based on the extensive discovery that the parties have already exchanged, the outstanding discovery, and the fact that this case is set for trial prior to the decision of any hypothetical CBM Review, this factor also weighs heavily against a stay.

### C.     Protegrity Would Suffer Undue Prejudice and Defendant Would Gain Tactical Advantages From a Stay.

In analysis of this factor, the Court looks to the timing of the stay request, the timing of the CBM Review request, the status of the CBM Review proceedings, and the relationship between Protegrity and Defendant.  As set forth above, Defendant was dilatory in filing its CBM Petitions.  Despite its claim that it intended to file petitions since the institution of this action, Defendant waited ten months before filing them and only after Protegrity filed its Motion to Compel discovery.

---

[6] Not only the petitioner, but also the real party in interest or privy of the petitioner, can be estopped after a CBM review. *See* 35 U.S.C. §325(e).

Defendant's failure to file its CBM Petitions until recently was based on dilatory motives. As set forth above, Defendant was aware of at least all but one prior art reference cited in the CBM Petitions as early as June 2014, and has been threatening Protegrity with CBM Petitions since the beginning of this litigation. Nevertheless, Defendant did not file the CBM Petitions until the beginning of October 2014, after Protegrity filed a Motion to Compel. All of these factors demonstrate Defendant's dilatory tactics in waiting to file the petitions. *See e.g. Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999)(denying a stay and noting that parties should not abuse reexamination proceedings to prejudice plaintiffs where the defendant was aware of prior art seven months before filing a request for reexamination and had threatened to file for reexamination previously).

Defendant claims that the decision in *Alice Corp. Pty. v. CLS Bank International*, affected the timing of filing the CBM Petitions. However, *Alice* was decided on June 19, 2014, and Defendant waited over three months from that decision before filing the CBM Petitions. Further, and contrary to Defendant's allegations, *Alice* did not substantively change the interpretation or analysis of computer-implemented inventions and therefore, did not serve as any basis to delay filing the CBM Petitions. Simply put, Defendant has set forth no reason why it waited so long to file the CBM Petitions.

Moreover, the CBM Reviews are at the earliest stage of the review process. Protegrity has until January 2, 2015, to file its response to the '201 Patent CBM Petition, and the PTAB has until April 2, 2015, to decide whether to grant review. 77 Fed. Reg. 48756; 37 C.F.R. §42.107(b). The earliest the CBM Review would be complete, if granted, would be October 2015, more than a month after trial is currently scheduled, which factor weighs against staying at this stage of the CBM Review proceedings. *Smartflash, LLC*, 2014 WL 3366661 at *5 (denying

motion to stay case when CBM Review would not be complete until after trial was scheduled, noting that the delay in time could result in unavailable witnesses, loss of witness memory, and loss of evidence at trial).

As discussed above, the majority of courts who have ruled on motions to stay prior to the PTAB's decision to grant review have denied a motion to stay. *See Automatic Mfg. Sys., Inc.*, 2013 WL 1969247; *Dane Technologies, Inc.*, 2013 WL 4483355; *Ultratec, Inc.*, 2013 WL 6044407; *U.S. Nutraceuticals, LLC*, 2013 WL 6050744); *Segin Systems, Inc.*, 2014 WL 1315968; *Freeny*, 2014 WL 3611948; *Smartflash LLC*, 2014 WL 3366661.  To stay the litigation at this stage based on the mere filing of the CBM Petitions prior to any grant of review would merely allow Defendant to continue its pattern of delay.

Defendant will also gain a tactical advantage from a stay because Defendant did not raise all of the prior art in the CBM Petitions that it raised in its Invalidity Contentions.  By not raising the same prior art, Defendant will have the advantage of getting two chances at a dispositive defense should the PTAB not invalidate all claims.  *See Smartflash*, 2014 WL 3366661 at *4 ("splitting of invalidity theories allows Apple to have the tactical advantage of two chances at a potentially dispositive defense").  This gives Defendant two bites at the apple, as Defendant will have two opportunities in two different forums to argue the patents are invalid, giving Defendant an unfair tactical advantage.  *See Segin Systems, Inc.*, 2014 WL 1315968 at *7 ("That Defendants may have two separate opportunities in two separate forums to challenge the validity of Plaintiff's patent does raise a concern of an unfair tactical advantage, giving them two bites of the apple as to a central defense.").

In addition to Defendant's tactical advantage, Protegrity will be unduly prejudiced by a stay.  The '201 and '281 Patents will expire on February 23, 2018.  As a result, granting a stay

will "erode the limited period for which [Protegrity] can claim permanent injunctive relief if liability is established." *Procter & Gamble Co.*, 2014 WL 533494 at *2. Defendant alleges that Protegrity has not filed for a preliminary injunction. However, courts have said that a patentee can elect not to file a preliminary injunction motion for a variety of reasons and this factor is not determinative of prejudice. *See Zillow, Inc. v. Truilia, Inc.*, 2013 WL 5530473, *7 (W.D. Wa. Oct. 7, 2013)(citing other cases addressing that failure to seek preliminary injunctive relief does not necessarily undermine claims of unfair prejudice). In this case, Protegrity has not had the benefit of analyzing Defendant's source code due to Defendant's dilatory actions. A preliminary injunction is an extreme remedy and Protegrity has chosen not to file for this extreme relief prior to having seen Defendant's source code. Protegrity's tactical decision not to file a preliminary injunction is no indication of lack of harm or lack of prejudice to Protegrity should a stay be granted.

Granting a stay will also likely impact the other pending Protegrity cases, as the Defendants there may well seek to stay their own separate litigations, spawning additional motion practice. Notably, as mentioned above, none of those other defendants has offered to submit itself to an estoppel effects from any CBM petitions should any of them be granted. Additionally, Protegrity, as an operating company with a number of significant customers, has a limited time period during which to seek preliminary and permanent injunctive relief against the various defendants. *See* Exhibit C, Declaration of Munshani at ¶ 3 (and supporting document). Any further delay continues to harm Protegrity and its ability to obtain the value of its strong patent portfolio.

Not only are the CBM Petitions at the earliest stage of the review proceedings, but Defendant was dilatory in filing them. Granting a stay would provide Defendant with several

unfair tactical advantages while unduly prejudicing Protegrity.   Therefore, this factors weighs heavily against granting a stay.

        **D.**      **A Stay Will Not Reduce the Burden of Litigation.**

Under this factor, the same considerations in the first factor are also relevant.  *Segin Systems, Inc.*, 2014 WL 1315968 at *7.  And when the motion to stay is filed before the PTAB indicates whether it will grant review of the petitions, should the PTAB deny review after a stay is granted, it would increase, rather than reduce the burden on the Court because the Court would have to change the trial date to account for the delay in scheduling and discovery.  *Id.*

Defendant's reliance on *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014) is inapplicable.   In *VirtualAgility*, the PTAB had already granted review of the petitions and granted review of *all* asserted claims of the single patent at issue, a factor that the court stressed as significant.  *Id*. at 1314.  The court also noted that many courts have denied as premature motions to stay when the PTAB has not yet granted review of the petitions.  *Id.* at 1315–1316.  Further, the court in *VirtualAgility* noted that the failure to include all known prior art would create a potential tactical advantage, weighing against a stay.  *Id*. at 1315.  Although the court did not find a tactical advantage for that reason in *VirtualAgility*, it so held because there was uncontradicted evidence that the defendant did not have evidence of the prior art when it filed the CBM Petition, which is completely contrary to the case here.  *Id.* at 1320.

Granting a stay will not reduce the burden of litigation, especially at this early stage of the CBM Review proceedings and given the uncertainty of the scope of any such review. Therefore, this factor weighs against granting a stay.

## III.    ARGUMENT IN SUPPORT OF MOTION TO COMPEL

Notably, Defendant's Memorandum only argues for a motion to stay but does not address Protegrity's motion to compel.  As set forth above, Defendant's motion to stay is premature and

without merit.  All four factors weigh in favor of denying a motion to stay.  Therefore, discovery should proceed and Defendant should be prevented from unilaterally deciding whether or not it should have to participate.  Defendant's feigned excuse for not providing discovery to save expenses and resources is specious.  Despite its repeated threats to file CBM Petitions, Defendant prolonged these petitions for ten months, all the while refusing to engage in discovery. Defendant's conduct is simply an attempt to stonewall Protegrity's efforts to move this case forward.

Respectfully, Defendant should not decide when this case is stayed or when to participate in discovery, and Defendant has already put Protegrity through the paces to add sufficient protections so that substantive discovery can begin.  The Court should compel Defendant to produce all responsive documents and things, including its source code, all user manuals, a working copy of its software, marketing literature, and white papers with respect to its Database Security Products.

## IV.    CONCLUSION

Protegrity respectfully seeks an order denying Defendant's motion to stay and compelling Defendant to produce documents and things responsive to Protegrity's First Set of Requests for Production of Documents, including its source code, user manuals, a working copy of its software, marketing literature, and white papers.  Furthermore, because Defendant's refusal to produce the requested documents is not substantially justified, Protegrity also seeks recovery of the attorneys' fees and expenses necessitated by this motion pursuant under Fed. R. Civ. P. 37(a)(5).

Dated: October 28, 2014

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack, ct29409
Stefan V. Stein, ct29408
GRAY ROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
(813) 273-5000
(813) 273-5415 (facsimile)
woodrow.pollack@gray-robinson.com
stefan.stein@gray-robinson.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2014, a true and correct copy of the foregoing was file electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack
