IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------X
                                           :

PROTEGRITY CORP.                         :                3:13 CV 1781 (JBA)
                                           :

V.                                        :
                                           :

EPICOR SOFTWARE CORP.          :        DATE: DECEMBER 16, 2014
                                         :
-------------------------------------------------------X

RULING ON MULTIPLE PENDING MOTIONS

        On December 2, 2013, plaintiff commenced this patent infringement action, with respect to two patents: U.S. Patent No. 8,402,281 ["'281 Patent"], entitled "Data Security System for a Database," issued March 19, 2013, and U.S. Patent No. 6,321,201 ["'201 Patent"], entitled "Data Security System for a Database Having Multiple Encryption Levels Applicable on a Data Element Value Level," issued November 20, 2002.  (Dkt. #1).  On January 27, 2014, defendant filed its answer, affirmative defenses and counterclaims (Dkt. #20), as to which plaintiff filed its answer to the counterclaims on February 18, 2014.  (Dkt. #21).  Under the electronic scheduling order filed on February 21, 2014 by U.S. District Judge Janet Bond Arterton, all discovery is to be completed by January 7, 2015, a status report is due by January 20, 2015, a telephonic status/pre-filing conference is scheduled for January 27, 2015, all dispositive motions are to be filed by February 7, 2015, and the case is trial ready by September 1, 2015.  By agreement of counsel, the Markman proceedings have been postponed pending resolution of certain procedural issues.  (Dkts. ##35-36, 47).[1]

        On July 29, 2014, and on three subsequent occasions, Judge Arterton referred this

---

[1]On October 21, 2014, U.S. District Judge Robert N. Chatigny held a lengthy status conference with counsel in this case and in the multiple other lawsuits filed by plaintiff Protegrity Corp. in this district, regarding the issue of consolidation.  (Dkts. ##52-53, 57).

file to this Magistrate Judge for discovery.  (Dkts. ##34, 43, 60, 66).[2]  On August 6, 2014, this Magistrate Judge filed her Ruling on Defendant's Motion for Protective Order (Dkt. #40; see also Dkts. ##25, 27-28, 45-46), with respect to the security of electronic data.

As of the present, there are six discovery motions pending before the Court.

First, on July 31, 2014, defendant filed its Motion to Compel Plaintiff to Disclose its Infringement Contentions, with brief and affidavit in support.  (Dkts. ##38-39).[3]  On August 21, 2014, plaintiff filed its brief in opposition.  (Dkt. #41).[4]  Eight days later, defendant filed its reply brief.  (Dkt. #44).

Second, on September 16, 2014, plaintiff filed its Motion to Compel Document Production and brief in support (Dkt. #50),[5] as to which defendant filed its brief and affidavit in opposition on October 7, 2014.  (Dkt. #55).[6]  Three weeks later, plaintiff filed its reply

---

[2]The file previously had been referred for settlement, obviously, without success.  (Dkts. ##23-24, 26, 30).

[3]The following four exhibits were attached to the Declaration of Attorney Cass, dated July 31, 2014: copy of correspondence between counsel, dated May 7, 2014, filed under seal (Exh. A; see also Dkts. ##37, 48); copies of correspondence between counsel, dated June 25 and July 15, 2014 (Exhs. B-C); and copy of Plaintiff's Supplemental Infringement Contentions, served June 13, 2014, also filed under seal (Exh. D; see also Dkts. ##37, 48).

[4]The following three exhibits were attached: e-mail chain between counsel, dated July 24 & 31, 2014 (Exh. A); and copies of defendant's Installation and Implementation Guide and System Administrator Guide, both filed under seal (Exhs. B-C; see also Dkts. ##42, 49).

[5]The following four exhibits were attached: copy of Plaintiff's 1st Request for Production of Documents to Defendant, dated April 22, 2014 (Exh. A); copy of Defendants' Response to Plaintiff's First Request for Production of Documents to Defendant, dated June 25, 2014 (Exh. B); another copy of e-mail chain between counsel, dated July 24 & 31, 2014 (Exh. C; see note 4 supra); and copy of e-mail chain between counsel, dated September 8, 11 & 12, 2014 (Exh. D).

[6]The following seven exhibits were attached to the Declaration of Attorney Cass, dated October 7, 2014: copy of Petition for Covered Business Method Review of Patent '201, Case No. CBM2015-00002, filed with the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office on October 1, 2014 (Exh. 1); copy of Petition for Covered Business Method Review of Patent '281, Case No. CBM2015-00006, filed with the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office on October 7, 2014 (Exh. 2); copy of 157 Cong. Rec. S1360-65 (daily ed. Mar. 8, 2011)(Exh. 3); copy of 157 Cong. Rec. S1053-43 (daily ed. Mar. 1, 2011)(Exh. 4); copy of Trial Proceedings Statistics, U.S. Patent and Trademark Office (Exh. 5)(omitting website citation);

brief.  (Dkt. #58).[7]

Third, on September 17, 2014, defendant filed its Motion for Expedited Status Conference (Dkt. #51),[8] as to which plaintiff filed its response on October 8, 2014.  (Dkt. #56).

Fourth, on October 7, 2014, defendant filed its Motion to Stay Litigation Pending Covered Business Method Reviews of '281 Patent and '201 Patent, and brief and affidavit in support.  (Dkts. ##54-55).[9]  Twenty-one days later, plaintiff filed its brief in opposition.  (Dkt. #58).[10] On November 12, 2014, defendant filed its reply brief and affidavit.  (Dkt. #61).[11]

On November 21, 2014, defendant filed its  Notice of Supplemental Authority (Dkt.

---

copy of <u>Patent Trial and Appeal Board, AIA Progress Statistics (as of 9/25/14)</u>, U.S. Patent and Trademark Office (Exh. 6)(omitting website citation); and copy of <u>Inter Parte Reexamination Filing Data – September 30, 2013</u>, U.S. Patent and Trademark Office (Exh. 7)(omitting website citation).

[7]The following three exhibits were attached: copy of Plaintiff's Supplemental Initial Infringement Contentions, dated June 13, 2014, filed under seal (Exh. A; <u>see also</u> Dkts. ##59, 71); copy of Defendant's Initial Invalidity Contentions, dated June 12, 2014 (Exh. B); and Declaration of Suni Munshani, dated October 28, 2014 (Exh. C), with list of major customers, filed under seal (Subexh. C.1.; <u>see also</u> Dkts. ##59, 71).

[8]The following three exhibits were attached: copy of letter, dated July 8, 2014, to Chief Judge Janet C. Hall, regarding the multiple lawsuits filed by plaintiff in this district (Exh. A); copy of Decision, dated April 15, 2014, in <u>Voltage Security, Inc. v. Protegrity Corp.</u>, Case CBM2014-00024, before the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office, regarding '281 Patent (Exh. B); and copy of <u>Alice Corp. Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347 (2014)(Exh. C).

[9]<u>See</u> note 6 <u>supra</u>.

[10]<u>See</u> note 7 <u>supra</u>.

[11]The following three exhibits were attached to the Declaration of Attorney Cass, dated November 12, 2014: copy of <u>Patent Trial and Appeal Board, AIA Progress Statistics</u> (as of 10/30/14), U.S. Patent and Trademark Office (Exh. 1)(omitting website citation); and copies of Decisions, dated January 23 & 25, 2013, respectively, in <u>Liberty Mut. Ins. Co. v. Progressive Cas. Ins. Co.</u>, Case CBM2012-00002(JL), before the Patent Trial and Appeal board, United States Patent & Trademark Office (Exhs. 2-3).

#62),[12] and plaintiff filed its Notice of Recent Decision.  (Dkt. #63).[13]

Fifth, on December 1, 2014, defendant filed its Motion for Protective Order and Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action and Notice of Deposition of Bruce Schneier, and brief and affidavit in support  (Dkts. ##64-65),[14] as to which plaintiff filed its brief in opposition ten days later.  (Dkt. #68).[15]

And sixth, on December 11, 2014, plaintiff filed its Emergency Motion to Compel Defendant to Produce Bruce Schneier for Deposition and Request for Expedited Status Conference at the Court's Convenience.  (Dkt. #68).[16]   And on that same day, plaintiff filed its Notice of Filing Motion for Transfer of Actions to the District of Connecticut for Coordinated or Consolidated Pretrial Procedures.   (Dkt. #67).[17]   The very next day,

---

[12]Attached as Exh. A was a copy of <u>Versata Software, Inc. v. Callidus Software, Inc.</u>, No. 2014-1468 (Fed. Cir. Nov. 20, 2014); <u>see also</u> 2014 WL 6480522.

[13]Attached was an Order, dated November 17, 2014, in the CBM matter here.

[14]Two exhibits were attached to the Declaration of Attorney Cass, dated December 1, 2014: copy of Subpoena to Testify in a Deposition in a Civil Action, dated November 13, 2014, directed to Bruce Schneier, with attachments (Exh. 1); and Notice of Deposition of Bruce Schneier, also dated November 13, 2014 (Exh. 2).

[15]The following six exhibits were attached: copy of e-mail chain between counsel, dated July 21, 2014 (Exh. A); copy of Declaration of Bruce Schneier, filed October 1, 2014 with the PTAB with respect to the CMB petition here (Exh. B); another copy of Notice of Deposition of Bruce Schneier, with attachments, dated November 13, 2014 (Exh. C); copy of February 21, 2014 entry on CM/ECF (Exh. D); another copy of defendant's Initial Invalidity Contentions, dated June 12, 2014 (Exh. E); and copy of defendant's Answer to Plaintiff's Second Set of Interrogatories (Nos. 8-9), dated November 24, 2014 (Exh. F).

[16]<u>See</u> note 13 <u>supra</u>.

[17]The following ten exhibits were attached: copy of plaintiff's Motion for Transfer of Actions to the District of Connecticut Pursuant to 28 U.S.C. § 1407 for Coordinated and/or Consolidated Claim Construction and <u>Markman</u> Proceedings, and brief in support, filed with the the Judicial Panel for Multi-District Litigation ["JPMDL"]; copies of correspondence with Chief Judge Janet C. Hall, dated July 8 & 25, and August 5, 23 & 25, 2014, regarding consolidation (Exhs. A-C, E-F); copy of e-mail chain between counsel, dated July 16-17, 2014 (Exh. D); copy of transcript of status conference, held October 21, 2014, before Judge Chatigny (Exh. G); and invoices, dated December 31, 2013 and January 31, 2014 (Exh. H).

defendant filed its brief in opposition (Dkt. #69), and in less than forty minutes, plaintiff filed its reply brief.  (Dkt. #70).

For the reasons stated below, defendant's Motion to Stay Litigation (Dkt. #54) is granted;

defendant's Motion to Compel Plaintiff to Disclose its Infringement Contentions (Dkt. #38), plaintiff's Motion to Compel Document Production (Dkt. #50), and plaintiff's Emergency Motion to Compel Defendant to Produce Bruce Schneier for Deposition and Request for Expedited Status Conference at the Court's Convenience (Dkt. #68) are denied without prejudice to renew at a later time;

defendant's Motion for Expedited Status Conference (Dkt. #51) is denied without prejudice as moot;

and defendant's Motion for Protective Order and Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action and Notice of Deposition of Bruce Schneier (Dkt. #64) is granted solely with respect to the timing of the deposition in light of the stay imposed herein.

## I.  DISCUSSION

### A.  DEFENDANT'S MOTION TO STAY LITIGATION (Dkt. #54)

As set forth in defendant's brief, in October 1, 2014, defendant filed a Petition for Covered Business Method ["CBM"] Review with the Patent Trial and Appeal Board ["PTAB"] of the United States Patent and Trademark Office ["USPTO"] with respect to nine claims of the '201 Patent, on the grounds of invalidity under 35 U.S.C. §§ 101, 102 and 103, Case Number CBM2015-00002; six days later, defendant filed a similar petition with respect to all claims of the '281 Patent, Case Number CBM2015-00006.   (Dkt. #55, at 1, 5; Cass Decl.,

Exhs. 1-2; <u>see also</u> Dkt. #63, Exh.).[18]

Defendant argues that under federal statute and/or regulations, unless the matter is expedited, the PTAB (composed of three administrative patent judges) must issue its preliminary decisions within six months of the petition filing date, which in this case is early April 2015; unless an extension has been granted, the PTAB must issue its final determinations within one year of the preliminary decisions, although recent statistics indicate it has been releasing its final determinations in slightly more than five months. (Dkt. #55, at 5-6, 7-8; Cass Decl., Exh. 5). Defendant also anticipates that its petitions will be instituted for CBM review, in that to date, the PTAB has instituted CBM review in seventy-five percent of its decisions. (Dkt. #55, at 8; Cass Decl., Exh. 6).

Defendant posits that numerous federal court decisions have imposed stays of litigation shortly after the filing of the CBM petition, and did not wait until the PTAB institutes the review sometime within six months of the filing. (Dkt. #55, at 9-10; Dkt. #61, Brief at 1-4). Defendant further argues that it has satisfied all four factors found in § 18(b) of the Leahy-Smith America Invents Act ["AIA"], PL 112-29 (codified as 35 U.S.C. § 321 notes), namely: (1) a stay will simplify the issues in this case and streamline the trial; (2) a stay is appropriate because discovery is in its infancy; (3) a stay will not unduly prejudice plaintiff or provide defendant any tactical advantage; and (4) a stay will reduce the burden of litigation on the court and the parties. (Dkt. #55, at 9, 10-17; Dkt. #61, Brief at 4-10).

In contrast, plaintiff emphasizes that plaintiff has until January 2, 2015 to file its response to the '201 Patent, and the PTAB has three months thereafter, or April 2, 2015, to

---

[18]There have been three prior CBM petitions regarding the '281 Patent: two filed by Voltage Security Inc. and Phoenix Payment Systems, Inc. were withdrawn, "apparently due to settlement[,]" while the third, filed by Square, Inc. on August 29, 2014 is currently pending before the PTAB. (Dkt. #55, at 5; Dkt. #58, at 1-2).

decide whether to grant review; the final CBM determination thus is due by October 2015, which is one month after trial is scheduled in this case. (Dkt. #58, at 3, 13-14). Plaintiff argues that defendant's motion is premature, in that numerous federal courts have held that a stay is only appropriate once the PTAB issues its preliminary decision to institute the petition. (Id. at 4-6, 14). With respect to the four factors under the AIA, plaintiff contends that: (1) granting a stay would not simplify the issues in question; (2) discovery already has begun and a trial date has been set; (3) plaintiff would suffer undue prejudice and defendant would gain tactical advantages from a stay; and (4) a stay will not reduce the burden of litigation. (Id. at 4, 6-16).

### 1. AIA AND ITS LEGISLATIVE HISTORY

Section 18(b), entitled "Request for Stay[,]" of the AIA provides in full:

> (1) If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on–

>> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

>> (B) whether discovery is complete and whether a trial date has been set;

>> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

>> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

As U.S. Senator Charles Schumer explained on March 1, 2011:

> One of the most critical elements of this amendment has to do with the stay of litigation while the review of the patent is pending at the PTO. The amendment includes a four-factor test for the granting of a stay that places a very heavy thumb on the scale in favor of the stay. Indeed, the test requires the court to ask whether a stay would reduce the burden of the

litigation on the parties and the court.  <u>Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay.</u>

157 Cong. Rec. S1053-54 (daily ed. Mar. 1, 2011)(emphasis added).  (<u>See also</u> Dkt. #55, Cass Decl., Exh. 4).  One week later, Senator Schumer again summarized:

> The transition program created by the Schumer-Kyl amendment is designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents.  <u>This program should be used instead of, rather than in addition to, civil litigation.  To that end, the amendment expressly authorizes a stay of litigation in relation to such proceedings and places a very heavy thumb on the scale in favor of a stay being granted.  It is congressional intent that a stay should only be denied in extremely rare instances.</u>

157 Cong. Rec. S1360-65 (daily ed. Mar. 8, 2011)(emphasis added).  (<u>See also</u> Dkt. #56, Cass. Decl., Exh. 3).  <u>See also Transunion Intelligence LLC v. Search Amer., Inc.,</u> No. 11-CV-1075 (PJS/FLN), 2014 WL 753781, at *1 (D. Minn. Feb. 26, 2014); <u>Zillow, Inc. v. Trulia, Inc.,</u> 2013 WL 5530573, at *3, n.1 (W.D. Wash. Oct. 7, 2013).

### 2.  TIMELINESS OF MOTION TO STAY

As pointed out by both parties in their briefs (Dkt. #55, at 9-10; Dkt. #58, at 4-6; Dkt. #61, Brief at 1-4), there is a split of authority in this country, in decisions filed within the past two years, whether a motion to stay is premature if filed in district court after the CBM petition has been filed with the USPTO but before the petition has been instituted by the PTAB.  Appellate judges in the Federal Circuit, and district judges in the Northern District of California, the Eastern District of Virginia, the Southern District of New York, the District of Nevada, the Central District of California, the Western District of Washington, the Western District of Pennsylvania, and the District of Delaware all have granted stays of litigation prior to the PTAB having reviewed the CBM petitions, although admittedly, virtually all of these decisions did so without any discussion, or acknowledgment, of this issue.  <u>See Versata</u>

8

Software, Inc. v. Callidus Software, Inc., No. 2014-1468, 2014 WL 6480522, at *1-2, 7 (Fed. Cir. Nov. 20, 2014); Moneycat Ltd. v. Paypal, Inc., No. 14-cv-2490 (JST), 2014 WL 5689844 (N.D. Cal. Nov. 4, 2014); Buysafe, Inc. v. Google, Inc., No. 3:13 cv 782 (HEH), 2014 WL 2714137, at *2-3 (E.D. Va. June 16, 2014); Cap. Dynamics AG v. Cambridge Assocs., No. 13 Civ. 7766 (KBF), 2014 WL 1694710 (S.D.N.Y. Apr. 1, 2014); Unwired Planet, LLC v. Google, Inc., No. 12-CV-00504 (MMD)(VPC), 2014 WL 301002, at *4-8 (D. Nev. Jan. 27, 2014); Intertainer, Inc. v. Hulu, LLC, No. CV 13-05499 (CJC)(RNBx), 2014 WL 466034 (C.D. Cal. Jan. 24, 2014); Zillow, 2013 WL 5530573, at *3-8; Sightsound Tech., LLC v. Apple, Inc., No. 11-1292, 2013 WL 2457284 (W.D. Pa. June 6, 2013); Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., 922 F. Supp. 2d 486 (D. Del. 2013).   In Buysafe, the district judge found that the court was obligated to consider the four factors in AIA § 18(b)(1) "regardless of whether [the] PTAB grants the [p]etition and a CBM [r]eview is ultimately conducted[.]" 2014 WL 2714137, at *3.

In contrast, district judges in the Southern District of California, the Eastern District of Texas, the Eastern District of Virginia, the Eastern District of Texas, the Middle District of Florida, and the District of Delaware explicitly have held that a stay of the federal litigation is premature until the PTAB has instituted the CBM petition, and thus have denied the motions to stay without prejudice to renew once the PTAB has rendered its preliminary decision instituting review of the CBM petition.  See Audatex N. Am. Inc. v. Mitchell Int'l Inc., No. 13-CV-1523 (BEN)(BKM), 2014 WL 4546796, at *1, 8-9 (S.D. Cal. Sept. 12, 2014); Loyalty Conversion Sys. Corp. v. Amer. Airlines, Inc., No. 2:13-CV-655, 2014 WL 3736514, at *1-1 (E.D. Tex. July 29, 2014); Smartflash LLC v. Apple, Inc., No. 6:13-cv-447, 2014 WL 3366661, at *1, 7 (E.D. Tex. July 8, 2014); Segin Sys., Inc. v. Stewart Title Guar. Co., No. 2:13 cv 190, 2014 WL 1315968, at *7 (E.D. Va. Mar. 31, 2014); Checkfree Corp. v.

9

Metavante Corp., No. 12-cv-15, 2014 WL 466023, at *1 (M.D. Fla. Jan. 17, 2014); Benefit

Funding Sys. LLC v. Advance Amer., Cash Advance Centers, Inc., No, 12-801-LPS, 2013 WL

3296230 (D. Del. June 28, 2013). At least one court has described this as the "majority"

position. Loyalty Conversion, 2014 WL 3736514, at *1 (multiple citations omitted).[19]  As the

district judge in Loyalty Conversion explained, "[w]hile the factors that Congress has directed

the Court to consider do not cut strongly in one direction or the other, the most salient point

is that the uncertainty as to whether the PTAB will grant the petition for CBM review makes

the task of weighing those factors highly speculative."  2014 WL 3736514, at *2.  Thus, the

district judge concluded that "the best course at this point is to defer ruling on the motion

to stay until the PTAB has made its decision whether to grant the petition for CBM review."

Id.

The  Federal  Circuit  touched  upon  this  issue  last  summer  in  VirtualAgility Inc. v.

Salesforce.com, Inc., 759 F.3d 1307 (Fed. Cir. 2014), where plaintiff VA sued defendants for

patent infringement in January 2013, and in late May 2013, defendant Salesforce filed a CBM

---

[19]A number of the cases cited in Loyalty Conversion, and more current ones as well,
however, concern denials as premature of motions to stay litigation with respect to petitions filed
with the USPTO for inter partes review ["IPR"], on which the PTAB has not acted yet, as opposed to
CBM petitions.  See, e.g., Canvs Corp. v. U.S., No. 10-540C, 2014 WL 4792943 (Fed. Cir. Sept. 26,
2014); Freeny v. Apple, Inc., No. 2:13-cv-00361 (WCB), 2014 WL 3611948, at *1 (E.D. Tex. July
22, 2014)(also describing this as the "majority" view); CDX Diagnostics, Inc. v. U.S. Endoscopy
Group, Inc., No. 13-cv-05669 (NSR), 2014 WL 2854656 (S.D.N.Y. June 20, 2014); Rensselaer
Polytechnic Inst. v. Apple, Inc., No. 1:13-CV-0633 (DEP), 2014 WL 201965 (N.D.N.Y. Jan. 15,
2014); U.S. Nutraceuticals, LLC v. Cyanotech Corp., No. 5:12-cv-366-Oc-10PL, 2013 WL 6050744
(M.D. Fla. Nov. 15, 2013); Ultratec, Inc. v. Sorenson Comm., Inc., No. 13-cv-346 (BBC), 2013 WL
6044407 (W.D. Wis. Nov. 14, 2013); Automatic Mfg. Sys., Inc. v. Primera Tech., Inc., No. 6:12-cv-
1727-Orl037 (DAB), 2013 WL 1969247 (M.D. Fla. May 13, 2013).

However, as the district judge explained in Buysafe, any analogy to IPR cases is
"inapposite[,]" for at least three reasons: (1) courts consider different factors when deciding whether
to stay litigation pending petitions for IPR as opposed to petitions for CBM; (2) an IPR
reexamination "can take several years to run its course[,]" whereas a CBM review is statutorily
required to be completed within one year, except for good cause shown; and (3) an IPR, which
predates the AIA, requires a showing of a "substantial new question" of patentability, whereas a
CBM does not.  2014 WL 2714137, at *2 (citations omitted).

petition with the PTAB for post-grant review of all claims of this patent.  Id. at 1308.  Five

days later, defendant filed a motion to stay the federal court proceedings under § 18(a)(1)(B)

of the AIA.  Id. at 1309.  In November 2013, the PTAB granted defendant's petition in part;

in early January 2014, the district court denied defendant's motion to stay pending CBM

review, prompting defendant to file an interlocutory appeal.  Id.    The Federal Circuit

reversed this decision under the four factors in AIA.  Id. 1309-20.  The Federal Circuit found

that "the timing factor heavily favor[ed] a stay."  Id. at 1315.  The court continued:

> We note at the outset that it was not error for the district court to wait until
> the PTAB made its decision to institute CBM review before it ruled on the
> motion.  Indeed, while some district courts ruled on motions to stay before
> the PTAB granted the petition for post-grant review, others have waited until
> post-grant review was instituted, and still others denied as premature the
> motion to stay without prejudice to refiling after institution of post-grant
> review.  We express no opinion on which is the better practice.  While a
> motion to stay could be granted even before the PTAB rules on a post-grant
> review petition, no doubt the case for a stay is stronger after post-grant
> review has been instituted.

Id. at 1315-16 (emphasis added)(citations omitted).   Thus, the VirtualAgility decision

suggests that filing a motion to stay prior to the PTAB having instituted CBM review is not

an automatic bar against granting the motion, but rather is one component that could weigh

against the granting of the motion, in conjunction with the myriad of other factors.

### 3.  THE FOUR FACTORS[20]

#### a. THE (A) FACTOR – SIMPLIFICATION OF ISSUES AND STREAMLINING THE TRIAL

Defendant argues that awaiting the expertise of the PTAB will simplify the issues and

streamline the trial whether the PTAB cancels all asserted claims (thus rendering this case

moot), cancels and/or amends only some of the asserted claims (thus narrowing the issues),

---

[20]This discussion will rely exclusively upon the decisions of the Federal Circuit in
VirtualAgility and Versata Software.

or leaves the patents-in-suit unchanged (thus eliminating any claims by defendant that a claim is invalid).   (Dkt. #55, at 10-13;[21] Dkt. #61, Brief at 6-9[22]).

In contrast, plaintiff argues that U.S. District Judge Robert N. Chatigny already has ruled in its favor with respect to invalidity of the '201 Patent, after a full day of hearing, in Protegrity Corp. v. Voltage Security, Inc., No, 10 CV 755 (RNC), Dkts. ##231, 233, 274, 278, so that even if the PTAB should decide to grant review of the CBM petitions, then the petitions "will ultimately fail." (Dkt. #58, at 7).   In addition, according to plaintiff, although defendant's CBM petition of the '281 Patent raises all sixty claims of that patent, it remains "speculative as to which claims of the '281 Patent the PTAB would review,"[23] and in this litigation, defendant has asserted multiple defenses and counterclaims that reach far beyond invalidity.  (Id. at 7-9).   Lastly, plaintiff argues that to the extent that any claims "survive" PTAB review, the issues will not be simplified, particularly because the "the PTAB and the district courts construe claims under different standards[.]" (Id. at 9-11).[24]

In VirtualAgility, the Federal Circuit made clear that the federal court is not to second guess any decisions of the PTAB with respect to a CBM petition.  As the Federal Circuit explained:

---

[21]According to defendant, statistics are not yet available for CBM reviews, but with respect to IPR petitions, the USPTO has historically either cancelled or amended at least one claim in 92% of its cases, leaving only 8% with all claims confirmed.  (Dkt. #55, at 11; Cass Decl., Exh. 7).

[22]According to defendant, as of October 30, 2014, the PTAB instituted trial on 112 of the 149 CBM petitions filed, slightly more than 70%.  (Dkt. #61, Brief at 6; Cass Decl., Exh. 1).

[23]Plaintiff disagrees with the statistics cited by defendant, see notes 21-22 supra, contending instead that as of October 16, 2014, there have been 241 CBM petitions filed, and 109 trials instituted, with seventeen final written opinions, in only six of which all the claims were invalidated.  (Id. at 9)(citations omitted).

[24]In its most recent filing (Dkt. #63), plaintiff has advised the Court that on November 17, 2014, two ALJs in the CBM review denied defendant leave to amend its petition to include Claim 8, which plaintiff argues strengthens its position here.  (At 1-2 & Exh.).

> The district court erred as a matter of law to the extent that it decided to "review" the PTAB's determination that the claims of the . . . patent are more likely than not invalid in the posture of a ruling on a motion to stay. Under the statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings.
>
> . . . Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB's decision on the merits of the CBM review. To do so would overwhelm and dramatically expand the nature of the stay determination. If the district court were required to "review" the merits of the PTAB's decision to institute a CBM proceeding as part of its stay determination, it would undermine the purpose of the stay.

759 F.3d at 1313.  For that reason, the Magistrate Judge declines to speculate, based upon statistics proffered by either party, how the PTAB is likely to rule upon defendant's CBM petitions, including the extent to which it might be swayed by Judge Chatigny's ruling in the Voltage matter, which ultimately was settled both in federal court and before the USPTO.

Defendant is correct that without regard to how the PTAB ultimately rules, the PTAB's determination will simplify the issues and streamline the trial -- whether the PTAB cancels all asserted claims (thus rendering this case moot), cancels and/or amends only some of the asserted claims (thus narrowing the issues), or leaves the patents-in-suit unchanged (thus eliminating any claims by defendant that a claim is invalid).  That is certainly the case where, as here, the CBM petition addresses all the claims in a patent.  In Versata Software, the Federal Circuit reversed the district judge on this issue, where the CBM petition sought only a "limited" review: "The district court seemingly created a categorical rule that if any asserted claims are not also challenged in the CBM proceeding, this factor disfavors a stay."  2014 WL 6480522, at *2, 3.   The Federal Circuit continued:

> Certainly this simplification factor weighs more strongly in favor of a stay when all of the litigated claims are undergoing CBM review.  But there can still be a simplification of the issues when only some, but not all, of the claims asserted in the litigation are challenged in a CBM review. In a situation like this one, a proper simplification analysis would look to what would be

13

resolved by a CBM review versus what would remain.

      The review of <u>every</u> claim of each of Versata's asserted patents leaves
little doubt that issues will be simplified.

<u>Id.</u> at *3 (citations & footnote omitted)(emphasis in original).[25]  Plaintiff is quite correct that

depending on the ultimate decision by the PTAB, there is the potential for a myriad of issues

to remain in this lawsuit.  However, depending on the ultimate decision by the PTAB, there

is also the potential that this lawsuit would become moot, or narrowed significantly.  As the

Federal Circuit emphasized twice in <u>Versata Software</u>, the simplification factor gains

additional weight when <u>all</u> of the litigated claims are undergoing CBM review, and that is

particularly the case here, where there are <u>sixty</u> claims at issue.  Thus, this first factor

strongly favors a stay.

b.  THE (B) FACTOR – DISCOVERY AND TRIAL DATE

      In its brief, filed in early October, defendant contends that discovery here is "in its

[i]nfancy[,]" the case is in an "early stage[,]" "[d]iscovery is just beginning as the Protective

Order was only recently entered in early September[,]" no depositions were noticed, the

<u>Markman</u> hearing has been stayed pending consolidation and other related matters, and

"major deadlines . . . are still months away."  (Dkt. #55, at 13-14).

      In its brief filed in late October, plaintiff emphasizes that the case is more than ten

months old, the parties have engaged in "several rounds of discovery," the parties have

served initial disclosures, served invalidity and infringement contentions, and proposed claim

terms for construction, "the Court has already invested resources in discovery disputes[,]"

a trial ready date of September 1, 2015 has been set, and the PTAB will not decide whether

---

[25]The Federal Circuit cautioned, however, that "[t]his is not to say . . . that the grant of a
CBM petition on a subset of asserted claims automatically simplifies the issues.  By its very nature,
the CBM process will always simplify some issues."  <u>Id.</u> at *3, n.3.

14

to institute this petition until April 2, 2015, at the earliest.  (Dkt. #58, at 11-12).  Thus, plaintiff argues that "[b]ased on the extensive discovery that the parties have already exchanged, the outstanding discovery, and the fact that this case is set for trial prior to the decision of any hypothetical CBM review, this factor also weighs heavily against a stay." (Id. at 12).

The briefs represent that Protegrity has produced more than 90,000 pages of documents and Epicor has produced more than 20,000 pages (although plaintiff describes these document as being "only . . . a user manual, the file history of the patents-in-suit, and some prior art filings from related litigations.").  (Dkt. #55, at 4; Dkt. #58, at 3, n.1, 11).

The Federal Circuit in VirtualAgility held that "[g]enerally, the time of the motion is the relevant time to measure the stage of litigation." 759 F.3d at 1317. The Federal Circuit found, however, that there was "no error" in the district court having waited until the PTAB granted the CBM review to rule on the motion, in that at either time, "[t]he litigation . . . was still at its infancy, which favors granting the stay."  Id. at 1317 & n.6.

In the Versata Software case, the Federal Circuit similarly held that it made no difference whether the court looked at the August 2013 date when the motion to stay was filed or the March 2014 date when the PTAB granted CBM review, in that even by the later date, "the case had not yet progressed to a point that disfavor[ed] a stay."  2014 WL 6480522, at *5 & n.5.  The Federal Circuit pointed out that although many documents and discovery requests had been exchanged, fact discovery was still ongoing, no fact witnesses had been deposed, the close of expert discovery was still seven months away so that no expert reports had been exchanged and no expert witnesses had been deposed, the parties had not proposed terms or claim construction positions, and both the Markman hearing and the trial "were well over a year away."  Id.   The Federal Circuit thus held that this factor

15

"strongly favors a stay" because while the parties had "conducted some discovery, we must also be mindful of the burden on the parties and the court in completing both fact and expert discovery, resolving summary judgment motions, completing the <u>Markman</u> process, and preparing for trial." <u>Id.</u> (citations & footnote omitted).

Whether the Court views this factor as of early October, when the motion was first filed, or as of the present time, it is not true, as asserted by defendant, that the case is in "its infancy." By October, the case was already ten months old, and by now, more than one year old. By sometime in October, the parties had exchanged more than 110,000 pages of documents in discovery. However, it is equally not true, as asserted by plaintiff, that this case is anywhere near the finish line for discovery, and other pretrial matters. Despite a discovery deadline (set on February 21, 2014) of January 7, 2015, which is just around the corner, there are two discovery motions pending, which if granted, necessarily would extend the discovery deadlines – defendant's Motion to Compel Plaintiff to Disclose its Infringement Contentions, filed July 31, 2014 (Dkt. #38) and plaintiff's Motion to Compel Document Production, filed September 16, 2014 (Dkt. #50). And just recently, defendant filed another discovery motion, its Motion for Protective Order and Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action and Notice of Deposition of Bruce Schneier, filed December 1, 2014. (Dkt. #64). Thus, this case resembles <u>Versata Software</u> in that while there has been a copious exchange of documents, fact discovery is not finished as evidenced by a pending discovery motion, expert discovery is not finished as evidenced by a pending discovery motion, the parties have not proposed terms or claim construction positions as evidenced by a pending discovery motion, dispositive motions are strongly anticipated, and both the <u>Markman</u> hearing and the trial are months away. Thus, this second factor mitigates in favor of a stay.

16

c.  THE (C) FACTOR – PREJUDICE TO PLAINTIFF OR CLEAR TACTICAL ADVANTAGE TO DEFENDANT

In its brief, defendant posits that there will be no prejudice to defendant "from a minimal stay" in light of the "tightly circumscribed timeline for the [CBM] proceeding[,]" and if anything, plaintiff "serves to benefit from the CBM review if the PTAB confirms its patent claims[,]" in which case plaintiff "can be adequately compensated with monetary damages." (Dkt. #55, at 14-15, 16).   Defendant further asserts that plaintiff "has shown no sense of urgency in this case[,]" by having engaged in an "unnecessary dispute over a suitable protective order," which delayed production of defendant's source code, and by failing to seek a preliminary injunction here.  (Id. at 15-16).   Lastly, defendant denies that it had an improper dilatory motive or sought to gain a tactical advantage, in that it notified plaintiff immediately after this lawsuit was filed that it intended to file the CBM petitions and "worked diligently to prepare and file its petitions."  (Id. at 14-15;  see also Dkt. #61, Brief at 9-10).

In opposition, plaintiff argues that it will suffer prejudice because the CBM reviews "are at the earliest stage of the review process[,]" the PTAB has until April 2, 2015 to decide whether to grant review, and the earliest that the CBM review would be completed, if granted, would be October 2015, more than one month after trial is currently scheduled. (Dkt. #58, at 13-14).   Plaintiff further asserts prejudice because the '201 Patent and '281 Patent will expire on February 23, 2018, and represents that it deferred any decision on seeking a preliminary injunction until it had an opportunity to review defendant's source code.  (Id. at 14-15).   In addition, plaintiff points out that defendant waited ten months to file this motion which is suggestive of "dilatory motives[,]" and it waited three months after the U.S. Supreme Court's ruling in Alice Corp. Pty. v. CLS Bank Int'l, ___ U.S. ____, 134 S. Ct. 2347 (2014), which "did not serve as any basis to delay filing the CBM [p]etitions."  (Id.

17

at 12-13).  Moreover, plaintiff contends that defendant "will also gain a tactical advantage from a stay because [it] did not raise all of the prior art in the CBM [p]etitions that it raised in its [i]invalidity [c]ontentions[,]" thus giving defendant "two bites at the apple, as [d]efendant will have two opportunities in two different for[a] to argue the patents are invalid[.]" (Id. at 14).[26]

In its reply brief, defendant represents that the parties are not direct competitors, nor has plaintiff ever argued such.  (Dkt. #61, Brief at 10).

In VirtualAgility, the Federal Circuit held that when the plaintiff and defendant are "direct competitors," such factor "weighs slightly against a stay[]" because "competition between parties can weigh in favor of finding undue prejudice."  759 F.3d at 1317-18 (citations omitted).   Another consideration is "the patentee's need for an expeditious resolution of its claim."  Id. at 1318.  The Federal Circuit continued: "A stay will not diminish the monetary damages to which VA will be entitled if it succeeds in its infringement suit–it only delays realization of those damages and delays any potential injunctive remedy."  Id. Although plaintiff argued that it needed injunctive relief as soon as possible to prevent irreparable harm to its business, the Federal Circuit noted that VA did not move for preliminary injunction, although it "acknowledge[d] . . . that there could be a variety of reasons that a patentee does not move for a preliminary injunction."  Id. at 1318-19

---

[26]In addition, plaintiff expresses concern that granting a stay will "also likely impact" the multiple other lawsuits filed by plaintiff in this district, "spawning additional motion practice[]" in that "[n]otably, . . . none of the other defendants has offered to submit itself to an estoppel effect[] from any CBM petitions should any of them be granted."  (Id. at 15; see also id. at 6, n.2 ).  This ruling obviously affects only this litigation, and unless and until all the Protegrity cases are consolidated by the district judges in Connecticut, or by the JPMDL, this ruling has no binding effect on all those other cases.

(citations omitted).[27] The Federal Circuit also focused on VA's delay "for some unexplained reason," in waiting nearly one year after the patent issued to file the lawsuit.  Id. at 1319.[28] The Federal Circuit held that "[t]hese facts weigh against VA's claims that it will be unduly prejudiced by a stay."  Id.

The Federal Circuit found no evidence of a dilatory motive, in that defendant filed its CBM petition less than four months after plaintiff instituted the patent infringement lawsuit, and then filed its motion to stay "almost immediately after filing the petition."  Id. at 1319-20.  Nor did the Federal Circuit find a clear tactical advantage from defendant withholding prior art, "given the uncontradicted evidence that, at the time [defendant] filed its CBM petition, it did not have the evidence necessary to include the . . . prior art."  Id. at 1320.  The Federal Circuit acknowledged that at times, such withholding could be construed as clear tactical advantage, but that was not the case in VirtualAgility, "[g]iven these unusual circumstances[.]" As the Federal Circuit explained:

> In some circumstances, a defendant's decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay.  Even though the "splitting" of prior art is allowed by statute in the sense that litigation estoppel does not attach to art that could have been, but was not, raised in CBM review, such behavior can still give the movant a clear tactical advantage within the meaning of § 18.

Id. (footnote omitted).[29]  Thus, the Federal Circuit concluded, "[a]t best, . . . this factor

---

[27]VA represented that it did not move for preliminary injunction because "it is a small company with limited resources and that the litigation process would move fast enough to make this unnecessary."  Id. at 1319.

[28]The Federal Circuit rejected plaintiff's additional argument of the "added risk of witness loss[,]" with respect to three witnesses over the age of seventy and one witness over the age of sixty, in that there was "no evidence that any of these individuals [were] in ill health[.]" Id.

[29]The Federal Circuit cautioned in a footnote, however, that "it may not be necessary, or even prudent, in some situations for the petitioner to provide all known prior art, no matter how irrelevant or redundant, to the PTAB during CBM review.  Failure to advance irrelevant or redundant prior art would not demonstrate a clear tactical advantage." Id. at 1320, n. 8.

weighs slightly against a stay on this record."  Id.

The record here is nowhere as complete as that in VirtualAgility.  However, the record reflects that the parties are not direct competitors, nor does it appear that defendant unnecessarily delayed in filing the CBM petitions, given the complexity of the patents at issue, or in filing the pending Motion to Stay; there is insufficient evidence to reach any conclusion with respect to the prior art.  Thus, as in VirtualAgility, at best, this third factor is neutral.

<u>d.  THE (D) FACTOR – REDUCTION OF BURDEN OF LITIGATION ON THE PARTIES AND ON THE COURT</u>

Defendant argues that a stay pending the CBM reviews will "avoid wasteful duplication of efforts and expense of substantial judicial and party resources," because otherwise, the parties and Court likely will be "expend[ing] substantial resources proceeding with nearly the entire litigation – claim construction, fact discovery, expert discovery, summary judgment and, possibly, trial – without the benefit of the PTAB's final decision on the CBM review[.]" (Dkt. #55, at 17).  Plaintiff responds that given the "early stage of the CBM [r]eveiw proceedings and . . . the uncertainty of the scope of any such review[,] . . . this factor weighs against granting a stay."  (Dkt. #58, at 16).

In VirtualAgility, the Federal Circuit combined its consideration of the first and fourth factors.  759 F.3d at 1310-15.  In Versata Software, the district court essentially had penalized defendant for having filed multiple motions prior to the motion to stay, finding that this fourth factor weighed against a stay, because defendant's "tactics have actually increased the burdens of litigation, rather than reduced them."  2014 WL 6480522, at *6 (citation omitted).  In reversing the district court on this issue, the Federal Circuit "conclude[d] that the district court clearly erred in evaluating the burden-of-litigation factor

exclusively through this backward-looking lens.   The correct test is one that focuses prospectively on the impact of the stay on the litigation, not on the past actions of the parties."   Id. (citations omitted)(emphasis in original).   The Federal Circuit further agreed with VirtualAgility's recognition that "the simplification analysis under the first factor often points in the same direction as reducing the burden of litigation under the fourth factor."   Id. (citation omitted).   The Federal Circuit thus held: "When framed appropriately, it becomes clear that a stay will indeed reduce the future burdens of litigation[,]" in that if defendant is successful in the CBM proceedings, then "a stay will relieve the parties and the district court of having to expend substantial resources on claim construction and both noninfringement and invalidity defenses."   Id. (citations omitted).

Looking prospectively, and not at the myriad of disputes that have arisen in this lawsuit to date, as in Versata Software, it is "clear" that a stay will reduce the future burdens of litigation for the parties and the Court, with respect to fact and expert discovery, claims construction, summary judgment and potentially trial, and particularly on the issues of noninfringement and invalidity defenses, depending on the results of the CBM review.   Thus, this fourth factor strongly favors a stay.

### e.  SUMMARY

Two of the four factors weigh heavily in favor of a stay in this case (i.e., the related factors of simplification of the issues and streamlining of the trial, and reduction of the burden of litigation on the parties and on the Court), one factor weighs somewhat in favor of a stay (i.e., discovery and the trial date), and one factor is neutral, at best (i.e., prejudice to plaintiff or clear tactical advantage to defendant).   Thus, on this record, defendant's

21

Motion to Stay (Dkt. #54) is granted.[30]

### B.  OTHER PENDING MOTIONS

In light of the stay imposed in Section I.A. supra, defendant's Motion to Compel Plaintiff to Disclose its Infringement Contentions (Dkt. #38), plaintiff's Motion to Compel Document Production (Dkt. #50), and plaintiff's Emergency Motion to Compel Defendant to Produce Bruce Schneier for Deposition and Request for Expedited Status Conference at the Court's Convenience (Dkt. #68) are denied without prejudice to renew at a later time; defendant's Motion for Expedited Status Conference (Dkt. #51) is denied without prejudice as moot; and defendant's Motion for Protective Order and Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action and Notice of Deposition of Bruce Schneier (Dkt. #64) is granted solely with respect to the timing of the deposition in light of the stay imposed herein.

### II.  CONCLUSION

Accordingly, for the reasons stated in Section I.A. supra, defendant's Motion to Stay Litigation (Dkt. #54) is granted; and

for the reasons stated in Section I.B. supra, defendant's Motion to Compel Plaintiff to Disclose its Infringement Contentions (Dkt. #38), plaintiff's Motion to Compel Document Production (Dkt. #50), and plaintiff's Emergency Motion to Compel Defendant to Produce Bruce Schneier for Deposition and Request for Expedited Status Conference at the Court's Convenience (Dkt. #68) are denied without prejudice to renew at a later time;

---

[30]On November 7, 2014, plaintiff filed its Motion for Transfer of Actions to the District of Connecticut Pursuant to 28 U.S.C. § 1407 for Coordinated and/or Consolidated Claim Construction and Markman Proceedings.  (Dkt. #67).  In its Notice of Supplemental Authority (Dkt. #62), defendant has advised the court that in four related cases pending in the Northern District of California, U.S. District Judge James Donato has entered stays, "[i]n light of the fact that Protegrity has filed a motion with the JPMDL for coordinated or consolidated claim construction proceedings in cases pending in various districts, . . . pending disposition of Protegrity'[s] motion."   (At 1).

defendant's Motion for Expedited Status Conference (Dkt. #51) is <u>denied without prejudice as moot</u>;

and defendant's Motion for Protective Order and Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action and Notice of Deposition of Bruce Schneier (Dkt. #64) is <u>granted solely with respect to the timing of the deposition in light of the stay imposed herein</u>.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).[31]

Dated at New Haven, Connecticut, this 16th day of December, 2014.


  /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

[31]If either counsel believes that a settlement conference before this Magistrate Judge could be productive, he or she should contact Chambers accordingly.